**Scott A. ERVIN, Plaintiff,**

v.

**CUSHMAN & WAKEFIELD OF NEW JERSEY and Steven B. Siegel, Defendants.**

**No. 89 Civ. 2175 (RPP).**

United States District Court, S.D. New York.

Oct. 10, 1990.

As Amended Oct. 23, 1990.

---

David G. Trachtenberg, New York City, for plaintiff.

Fink Weinberger, P.C. by Stephen E. Powers, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants Cushman & Wakefield of New Jersey ("C & W") and Stephen Siegel ("Siegel") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Plaintiff Scott A. Ervin ("Ervin") brings this action 1) to recover a real estate commission of $210,000 under a Co–Broker Agreement entered into by the parties; 2) to recover $210,000 for breach of an oral agreement to conduct other real estate business with the plaintiff; and 3) to recover damages for fraud in inducing plaintiff to enter into the alleged oral agreement.

Defendants C & W and Siegel claim that they are entitled to summary judgment as a matter of law because 1) plaintiff was not authorized by his employer to receive the commission and thus plaintiff's receipt of the commission would violate the New Jersey statute concerning commercial bribery; 2) plaintiff was not licensed as a real estate broker in the State of New Jersey and was not entitled receive real estate commissions under New Jersey law; 3) plaintiff is prohibited from recovery because he is seeking compensation for acting for one of the parties in a different capacity for a consideration, in violation of the New Jersey statutes regulating the conduct of real estate brokers and salespersons; 4) plaintiff's alleged subsequent agreement is based on plaintiff's refraining from enforcing his illegal co-brokerage agreement and therefore lacks consideration for defendants' obligations. For the reasons set forth below, defendants' motion for summary judgment is denied. The following facts are not in dispute.

## BACKGROUND

In 1986, Ervin, an Executive Vice President of First Boston Real Estate and Development Corporation ("FBR") contacted Siegel, then chairman of C & W, to tell him that The First Boston Corporation ("First

Boston") was considering moving some of its operations out of Manhattan and into neighboring areas such as Queens, Staten Island or New Jersey. Ervin told C & W that he was authorized to act as a broker for First Boston and asked if C & W would be interested in acting as co-broker with him on the transaction. The parties entered into a Co–Broker Agreement ("Co–Broker Agreement") which provided that any commission or fee paid to either of them in connection with First Boston's lease or purchase would be divided between them, 70 percent going to C & W and 30 percent to Ervin.

After the parties entered into the Co–Broker Agreement, C & W worked to find suitable space for First Boston's needs in New Jersey. C & W located premises owned by Princeton University and began negotiations as to the possibility of First Boston leasing the property. After the lease was successfully negotiated, Princeton University paid $300,000 and First Boston paid $400,000 to C & W for brokerage services. Of that total $700,000, Ervin claims that he is entitled to 30 percent, or $210,000, plus interest.

FBR was a subsidiary of First Boston. In addition to being employed by FBR, Ervin had a co-brokerage agreement with First Boston, dated February 7, 1983. Ervin, a licensed real estate broker in New York at the time of the transaction, was not licensed as a real estate broker in the state of New Jersey.

Shortly before the lease was signed, Siegel and Ervin discussed the Co–Broker Agreement, during which discussion Ervin agreed not to insist upon performance of the Co–Broker Agreement. Siegel claims that he told Ervin that the agreement was illegal unless Ervin had authority from First Boston to receive a commission and that Ervin waived his fee when Siegel told Ervin he had to prove his authority or C & W would waive its commissions and go unpaid. Ervin claims that he agreed not to seek any rights under the Co–Broker Agreement, in view of C & W's representation that it could lose its license in New Jersey if he received a fee because C & W

had not disclosed Ervin's co-brokerage to Princeton University. He says he waived the fee in return for Siegel's agreement that C & W would conduct enough other real estate business with him to allow Ervin to recoup the same amount of money, i.e. $210,000. Ervin also claims that Siegel assured him that if this were not done, he would personally pay Ervin $210,000. C & W has not done any more real estate business with Ervin and neither C & W nor Siegel have paid Ervin any money.

## DISCUSSION

To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence offered demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Defendants move for summary judgment on the first cause of action based on three theories of illegality of the Co–Broker Agreement. Their first theory of illegality is that payment to Ervin would have meant C & W had committed the crime of commercial bribery under New Jersey law, which both parties agree is the governing law in this case. The New Jersey statute on commercial bribery in pertinent part reads as follows:

a. A person commits a crime if he solicits, accepts or agrees to accept any benefit as a consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as:

1) An agent, partner or employee of another; ...

2) A trustee, guardian, or other fiduciary; ...

4) An officer, director, manager or other participant in the direction of the affairs of an incorporated or unincorporated association; ...

c. A person commits a crime if he confers, or offers or agrees to confer, any benefit the acceptance of which would be criminal under this section.

N.J.S.A. 2C:21–10 (1987). Unless an employee is authorized by his employer to receive compensation from another party in connection with a transaction in which his employer is involved, the crime of commercial bribery has been committed. *See*, e.g., *Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, 170 N.J.Super. 334, 406 A.2d 474 (App.Div. 1979).

Defendants submit the affidavit of Richard Kohlbrecher ("Kohlbrecher"), at all times relevant the vice president of First Boston who was responsible for moving some of First Boston's operations to a new location, to support their contention that plaintiff was not authorized to receive a commission. Plaintiff insists that he had the requisite authority from Kohlbrecher and testifies that he sent Kohlbrecher a copy of the Co–Broker Agreement between himself and C & W at the time it was signed. Thus there exists a genuine issue of material fact. The issue of authorization is a question for a finder of fact to decide.

Second, defendants claim that to pay plaintiff for brokerage services would be a violation of New Jersey law since plaintiff is not a licensed real estate broker in New Jersey despite his representation in the Co–Broker Agreement to the contrary. The relevant New Jersey statute provides that the New Jersey Real Estate Commission may fine, or revoke or suspend the license of, a real estate broker or salesperson

(such as C & W and Siegel) for, among other actions:

k. Paying any rebate, profit, compensation or commission to anyone not possessed of a real estate license; ...

N.J.S.A. 45:15–17 (1987). New Jersey law also provides that:

No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker or salesman, or to engage in any of the activities described in § 45:15–3 of the Revised Statutes, without being licensed so to do as hereinafter provided.

N.J.S.A. 45:15–1 (1987). Plaintiff, however, testifies that he did not perform brokerage services in New Jersey but merely referred a client for such services to C & W. He states that such conduct is permitted under N.J.S.A. 45:15–3.1, which reads as follows:

A duly licensed real estate broker of this State may pay a referral fee or referral commission to a person not licensed as a nonresident real estate broker under R.S. 45:15–20 if the person is a licensed real estate broker of another jurisdiction in which the licensed broker maintains a bona fide office. A licensed real estate broker of another jurisdiction may make a referral, receive a referral fee or referral commission, and bring or maintain an action in the courts of this State against a duly licensed real estate broker of this State for the collection of the fee or commission.

For purposes of this section, "referral" means the introduction, assisting, or directing of a person by one broker to another broker for real estate brokerage services, aid, or information; ...

N.J.S.A. 45:15–3.1 (1987). Thus an issue of fact exists as to whether plaintiff's conduct came within the statutory exception of a referral as plaintiff claims.

Third, defendants claim that if plaintiff received a commission in connection with this transaction it would violate N.J.S.A.

45:15–17, which forbids brokers from, among other actions:

> b. Acting for more than one party to a transaction without the knowledge of all parties thereto; or ...

> i. Collecting a commission as a real estate broker in a transaction, when at the same time representing either party in a transaction in a different capacity for a consideration; ...

N.J.S.A. 45:15–17 (1987). As the federal district court pointed out in a recent case, "[t]he law of New Jersey is clear that a broker who violates N.J.S.A. 45:15–17(i) may not collect his commission earned in violation of the statute." *Coldwell Banker Commercial Real Estate Services v. Wilson*, 700 F.Supp. 1340, 1347 (D.N.J.1988). *See also Mortgage Bankers Ass'n v. New Jersey Real Estate Commission*, 200 N.J. Super. 584, 491 A.2d 1317 (App.Div.1985), *rev'd and remanded on other grounds*, 102 N.J. 176, 506 A.2d 733 (1986). Whether Ervin was representing more than one party in this transaction and whether he was representing a party in this transaction (First Boston) in a different capacity for consideration are issues of fact.

Ervin admits that he was an employee of FBR and also had a co-brokerage agreement with First Boston. Defendants also invoke but do not substantiate allegations of an employment agreement with First Boston. Whether those arrangements and his admitted activities in connection with this transaction constitute a violation of this provision of New Jersey law has not been made clear by defendants' motion papers. Accordingly, defendants' motion for summary judgment on the first cause of action is denied.

As to the second cause of action, alleging breach of an oral agreement, the defendants base their motion on the lack of consideration furnished by plaintiff for such an agreement, claiming that plaintiff's waiver of enforcement of the unenforceable Co–Broker Agreement constitutes no consideration. The legal point, although valid, is irrelevant since the Court is unable to find the Co–Broker Agreement unen-forceable as a matter of law, due to the issues of fact discussed above.

The third cause of action alleges fraud by the defendants in that they induced the plaintiff to forego enforcing the Co–Broker Agreement by making false promises to do further business with him or otherwise compensate him for waiving the $210,000 commission he claims. Again, defendants rely on the alleged invalidity of the Co–Broker Agreement to dismiss the fraud claim. Since the Court finds genuine issues of fact as to the validity of the Co–Broker Agreement, the motion for summary judgment on the fraud claim is also denied.

## CONCLUSION

The Court finds that genuine issues of material fact exist as stated above. Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.